**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

|  |  |
|---|---|
| In re: | Chapter 7 |
| CaaStle, Inc. | Case No. 25-11187-BLS |
| Debtor. | |
| GEORGE L. MILLER, solely in his capacity as chapter 7 trustee for the bankruptcy estate of CaaStle, Inc., | |
| Plaintiff, | |
| v. | |
| Jaswinder Pal Singh, individually and in his capacity as Trustee of the Singh Revocable Trust, and John Does 1-10, | Adv. Pro. No.: 26-50216-BLS |
| Defendants | |

**AMENDED COMPLAINT TO AVOID AND RECOVER TRANSFERS PURSUANT TO 11 U.S.C. §§ 544, 548 AND 550 AND APPLICABLE STATE LAW, AND TO DISALLOW CLAIMS PURSUANT TO 11 U.S.C. § 502**

Plaintiff George L. Miller (the "Plaintiff" or the "Trustee"), solely in his capacity as the Chapter 7 Trustee of the bankruptcy estate of CaaStle Inc. ("CaaStle" or the "Debtor"), by and through undersigned counsel, hereby submits this amended Complaint[1] to avoid and recover transfers (the "Complaint") against Defendant Jaswinder Pal Singh ("Defendant Singh"), Jaswinder Pal Singh in his capacity as trustee of the Singh Revocable Trust (the "Singh Trust"), and John Does 1-10  (together with Defendant Singh and Jaswinder Pal Singh in his capacity as trustee of the Singh Trust, the "Defendants"), pursuant to Rule 7001 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), sections 502, 544, 548, and 550 of title 11 of the

---

[1]   The Complaint has been amended to replace "John Doe 1" as trustee of the Singh Revocable Trust with Jaswinder Pal Singh as trustee of the Singh Revocable Trust

#125548460v1

United States Code, 11 U.S.C. §§ 101-1532 (the "Bankruptcy Code"), and applicable state law, and avers as follows:

## Background

1.     On June 20, 2025 (the "Petition Date"), the Debtor filed for voluntary relief under Chapter 7 of the Bankruptcy Code.  The Trustee has been appointed as the Chapter 7 Trustee for the Debtor's bankruptcy estate.

2.     The Debtor is a Delaware corporation that operated a full-service online platform that enabled rental subscription and e-commerce services for women's apparel brands.

3.     Christine Hunsicker ("Hunsicker") founded CaaStle and served as both a member of its Board of Directors (the "Board") and its Chief Executive Officer ("CEO") from CaaStle's inception until her resignation as a member of the Board on December 15, 2024, and her resignation as CEO on March 23, 2025.

4.     CaaStle is a privately held company.  On information and belief, it has in excess of 900 shareholders.

5.     According to the July 18, 2025 indictment of Christine Hunsicker filed by the United States Attorney for the Southern District of New York (the "Indictment") and the complaint filed on July 18, 2025 against Hunsicker by the Securities and Exchange Commission (the "SEC Complaint"):

a.     Beginning no later than February 2019 until her indictment in March 2025, CaaStle's CEO Christine Hunsicker knowingly, deliberately, and repeatedly falsified financial statements and audit documents. *See* Indictment at ¶¶ 3-15, 20-25; SEC Compl. at ¶¶ 33-94;

#125548460v1

b.        Hunsicker shared doctored financial documents with investors, prospective investors, and the Board of Directors which significantly inflated CaaStle's financial metrics. *See* Indictment at ¶¶ 3-15, 20-25; SEC Compl. at ¶¶ 33-94; and

c.        Rather than informing investors of Hunsicker's fraud, CaaStle executives allowed Hunsicker to remain as CaaStle's CEO and continue to solicit investors for capital while the Board conducted an internal review on Hunsicker.  *See* SEC Compl. at ¶¶ 109-120.

6.        The Indictment included 6 counts.  On March 4, 2026, Hunsicker pleaded guilty to Count 2 of the Indictment, fraud in the purchase and sale of securities.  Sentencing has been scheduled for August 2026.

7.        CaaStle's revenue never reached a level sufficient to support CaaStle's operations; and despite substantial equity investments, CaaStle's operational performance significantly deteriorated beginning in 2019.

8.        According to the Debtor's records,

a.        despite being an 8-year-old company as of 2019, CaaStle did not make a profit in any of the years from 2019 to 2024, and revenues declined year-to-year in each of the years over that period.  Indeed, substantial operating losses occurred in each of those years;

b.         for the Debtor's fiscal year ending September 30, 2023, CaaStle had net losses in excess of $80 million, and for the Debtor's fiscal year ending September 30, 2024, CaaStle had net losses in excess of $71 million; and

c.        as of September 30, 2023, the Debtor had unrestricted cash of less than $1 million and current liabilities exceeding $13 million, while as of September 30, 2024, the Debtor had total cash of $4.3 million and current liabilities exceeding $21 million.

#125548460v1

9.      As a result, from at least 2019 forward, it was clear that CaaStle was not profitable as a business, and survived only by finding new investors to provide capital to the company.

10.     At all times relevant hereto, CaaStle was insolvent.

11.     At all times relevant hereto, CaaStle's actual balance sheet included as the most valuable asset of the company "Intangible assets, net of accumulated amortization".  For example, as of September 30, 2023 such intangible assets were described in the company's actual balance sheet as having a value in excess of $14 million.

12.     The company's intangible assets consisted primarily of internally developed software related to the rental apparel business and related patents.  CaaStle spent millions of dollars in employee payroll and related costs developing such software and spent over $1 million with respect to its patents, but the actual value of such software and patents was far below the amounts invested by the company.

13.     For several years prior to the redemption which is the subject of this avoidance action, Hunsicker had grossly overstated to investors the financial results of the company.  For example, according to the Indictment, falsified reports indicated (a) that the company's operating profit in the second quarter of 2023 was nearly $24 million, while the actual operating profit was less than $30,000; (b) that the company's revenue for 2021 was more than $100 million higher than the actual result; and (c) that the company's net revenue for 2022 was $230 million while the actual net revenue did not exceed $20 million.  *See* Indictment at ¶¶ 6-7.

14.     Accordingly, at all times relevant hereto, investors in CaaStle held claims against the company based on the gross misrepresentation of financial performance.

#125548460v1

15.    Not surprisingly, such claims of investors were not reflected in the company's balance sheet.  Such claims contributed to the insolvency of the Debtor, but at all times relevant hereto CaaStle was insolvent even without taking such investor claims into account.

16.    Further, at all times relevant hereto, CaaStle had inadequate levels of cash, especially in light of its staggering levels of operating losses.  Accordingly, CaaStle was engaged in a business for which the remaining assets of the Debtor were unreasonably small in relation to the business.

17.    Further, at all times relevant hereto, in light of CaaStle's sustained inability to make a profit and its staggering operating losses, it is clear that CaaStle intended to incur, or believed or should have believed that the Debtor would incur debts beyond the Debtor's ability to pay as they came due.

18.    Despite the staggering operating losses and inadequate cash reserves, a select few shareholders enjoyed the benefit of cashing out their CaaStle stock.

19.    Of the more than 900 CaaStle shareholders, approximately 15 individuals, entities, or affiliated entities received payments from CaaStle for redemption of shares in CaaStle.  Of these 15 parties, 4 were officers and/or directors of the Debtor and therefore insiders on the basis of their positions as officers and/or directors.

20.    Some shareholders were able to redeem their CaaStle stock by threatening to expose the massive fraud Hunsicker orchestrated, and were required to agree to confidentiality provisions in order to redeem their stock.

21.    The transfer by CaaStle for the benefit of Defendant Singh was made with actual intent to hinder, delay, or defraud creditors based, inter alia, on the following factors:

5

#125548460v1

a.    The transfer was made in furtherance of a scheme to grossly and fraudulently misrepresent the financial performance of the company to investors, and upon information and belief, upon discovery of the scheme to silence certain investors by paying them and requiring them to keep the facts relating to the fraud confidential.  The scheme to grossly and fraudulently misrepresent the financial performance of the company to investors was one of the bases for Count 2 of the Indictment, to which Hunsicker has pled guilty;

b.    The transfer was made to an insider;

c.     The transfer was concealed by requiring Defendant Singh to keep the terms of the transfer confidential and to refrain from disparaging CaaStle;

d.    Before the transfer was made, the Debtor had been threatened with the disclosure of the scheme, and threatened with suit regarding such scheme;

e.    At the time the transfer was made, the amount transferred was a substantial portion of the company's cash assets;

f.    The transfer enabled the Defendants to receive far more than they would in a liquidation of the Debtor's assets;

g.    The value of the consideration received by the Debtor for the transfer was not reasonably equivalent to the value of the assets transferred;

h.    The Debtor was insolvent or became insolvent shortly after the transfer was made;

i.    No effort was made by the Debtor to value the shares at the time of the redemptions; and

#125548460v1

j.      The redemption was made with funds that otherwise could have been made available to pay creditors (thereby hindering, delaying and defrauding them) in order to continue the fraudulent scheme and hide the true financial condition of the Debtor.

22.     The Trustee commences this action to recover for the Debtor's estate the sum of at least $6,000,000 (the "Redemption Amount") from Defendant Singh as the party for whose benefit the transfer was made; from the Singh Trust as the initial transferee of the Redemption Amount, and from any immediate or mediate transferee of the initial transferee of the Redemption Amount, plus, as appropriate and as set forth in more detail below, interest, costs, and attorneys' fees.

**Jurisdiction and Venue**

23.     This Court has jurisdiction over the claims raised in this adversary proceeding pursuant to 28 U.S.C. §§ 1334 and 157 and the Amended Standing Order of Reference issued by the United States District Court for the District of Delaware on February 29, 2012.

24.     This adversary proceeding arises under Title 11 and is commenced pursuant to sections 502(d), 548, 550, and 551 of the Bankruptcy Code and Bankruptcy Rules 7001 and 7008.

25.     This is a core proceeding pursuant to 28 U.S.C. § 157(b) such that the Court may enter a final order consistent with Article III of the United States Constitution. Pursuant to Rule 7012-1 of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules"), Plaintiff consents to the entry of a final order by the Court in connection with this Complaint to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

26.     Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

7

**The Parties**

27. Plaintiff is the duly appointed Chapter 7 Trustee for the Debtor's Estate.

28. At all times relevant hereto, CaaStle was a Delaware corporation with a principal place of business in New York, NY.

29. Defendant Singh is a natural person with an address of 251 W. 19th Street, Unit 10D, New York, NY 10011.

30. Defendant Singh was a co-founder of CaaStle and served as its Chief Technology Officer. Defendant Singh served as a director of CaaStle from the inception of the company through 2017, and again from December 2024 through the Petition Date. Defendant Singh was also a shareholder in CaaStle.

31. Jaswinder Pal Singh is the trustee of the Singh Trust.

32. At all times relevant hereto, Defendant Singh was an insider and person in control of the Debtor as those terms are defined in 11 U.S.C. § 101(31).

33. John Does 1-10 are natural persons and/or entities which subsequently received all or a portion of the Redemption Amount from Defendant Singh or the Singh Trust.

**Factual Background**

34. On or about October 8, 2024, CaaStle redeemed 2,790,000 shares of common stock held by Defendant Singh (the "Share Redemption"), which stock had been issued on December 30, 2011, December 18, 2019, and September 27, 2019.

35. In connection with the Share Redemption, CaaStle transferred the Redemption Amount by wire transfer for the benefit of Defendant Singh on or about October 8, 2024.

36. Defendant Singh was a member of a select group of shareholders of CaaStle who were offered repurchases or redemptions of their shares. The vast majority of CaaStle shareholders

8

#125548460v1

were not offered any redemption or repurchase and, as such, did not receive the benefit of a repurchase of their shares.

37.    Further, certain shareholders became aware of Hunsicker's fraud and demanded their shares be repurchased in exchange for their silence.

38.    At the time the Redemption Amount was paid,

a.    CaaStle was insolvent or became insolvent as a result of the transfer, insofar as the fair value of its liabilities exceeded the fair value of its assets;

b.    CaaStle was engaged in a business for which the property remaining with CaaStle was unreasonably small capital.  For example, according to the Debtor's records, the Debtor's unrestricted cash at the end of fiscal year 2023 was less than $1 million, at a time when its current liabilities exceeded $13 million, and after suffering a net loss in excess of $80 million in fiscal year 2023; and the Debtor's total cash at the end of fiscal year 2024 was $4.3 million, at a time when its current liabilities exceeded $21 million, and after suffering a net loss in excess of $71 million in fiscal year 2024; and

c.    CaaStle intended to incur, or believed or reasonably should have believed that it would incur, debts that would be beyond its ability to pay as such debts matured.

39.    The payment of the Redemption Amount provided little or no value to CaaStle in that in exchange for substantial amounts of money, CaaStle received its own stock, which was effectively worthless or close to worthless.

40.    On information and belief, the amount paid for the redemption of stock was based not on the then-current actual value of the stock, but rather on the amount originally invested, and/or other factors unrelated to the stock's actual value as of the date of the redemption.

9

41.     The value received by CaaStle in exchange for the transfer of the Redemption Amount was therefore less than reasonably equivalent value.

42.     In connection with the redemption of stock, CaaStle and Defendant Singh executed an agreement (the "Repurchase Agreement") dated October 8, 2024.   Pursuant to the terms of the Repurchase Agreement, CaaStle required that Defendant Singh keep the terms of the Repurchase Agreement confidential and that Defendant Singh not disparage CaaStle.

**COUNT I**
**(v. Defendant Singh, Jaswinder Pal Singh as the trustee of the Singh Trust, and Singh Trust)**
**Avoidance of Fraudulent Transfer– 11 U.S.C. §§ 544, 548**
**(Actual Intent)**

43.     Plaintiff realleges and incorporates all preceding paragraphs as if fully set forth herein.

44.     The transfer of the Redemption Amount was a transfer of an interest of the Debtor in property.

45.     The Share Redemption is an avoidable transfer under section 548 of the Bankruptcy Code because it was made on or within two years before the Petition Date and CaaStle made the Share Redemption with actual intent to hinder, delay, or defraud any entity to which CaaStle was or became indebted to on or after the date the transfer was made;

46.     Accordingly, Plaintiff seeks avoidance of the transfer of the Redemption Amount and judgment against Defendant Singh, Jaswinder Pal Singh in his capacity as the trustee of the Singh Trust, and the Singh Trust in the amount of at least the Redemption Amount of $6,000,000, plus interest and costs, and for such other relief as the Court deems appropriate.

#125548460v1

## COUNT II
**(v. Defendant Singh, Jaswinder Pal Singh in his capacity as the trustee of the Singh Trust, and Singh Trust)**
**Avoidance of Fraudulent Transfer– 11 U.S.C. §§ 544, 548**
**(Less than Reasonably Equivalent Value)**

47.    Plaintiff realleges and incorporates all preceding paragraphs as if fully set forth herein.

48.    The transfer of the Redemption Amount was a transfer of an interest of the Debtor in property.

49.    CaaStle was insolvent at the time of the transfer of the Redemption Amount because the sum of its debts was greater than the value of all of its property, at a fair valuation, exclusive of (a) property transferred, concealed or removed with intent to hinder, delay, or defraud its creditors, and (b) property that may be exempted from property of the estate under 11 U.S.C § 522.

50.    The Share Redemption is an avoidable transfer under section 548 of the Bankruptcy Code because it was made on or within two years before the Petition Date, CaaStle received less than a reasonably equivalent value in exchange for the Share Redemption, and:

    i.    CaaStle was insolvent on the date the Share Redemption was made or became insolvent as a result of the Share Redemption;

    ii.    CaaStle was engaged in business or a transaction, or was about to engage in business or a transaction, for which any property remaining with CaaStle was unreasonably small capital; or

    iii.    CaaStle intended to incur, or believed that it would incur, debts that would be beyond its ability to pay as such debts matured.

51.    Accordingly, Plaintiff seeks avoidance of the transfer of the Redemption Amount and judgment against Defendant Singh, Jaswinder Pal Singh in his capacity as the trustee of the

11

Singh Trust, and the Singh Trust in the amount of at least the Redemption Amount of $6,000,000, plus interest and costs, and for such other relief as the Court deems appropriate.

## COUNT III
**(v. Defendant Singh, Jaswinder Pal Singh in his capacity as the trustee of the Singh Trust, and Singh Trust)**
**Avoidance of Fraudulent Transfer– 6 Del. C. §§ 1304 and 1307**
**(Actual Intent)**

52.     Plaintiff realleges and incorporates all preceding paragraphs as if fully set forth herein.

53.     Pursuant to 11 U.S.C. § 544(b)(1), the Trustee may avoid any transfer of an interest of the Debtor in property that is voidable under applicable law by a creditor holding a claim that is allowable under 11 U.S.C. § 502.

54.     The Share Redemption is an avoidable transfer under Delaware law because it was made on or within four years before the Petition Date and CaaStle made the Share Redemption with actual intent to hinder, delay, or defraud creditors of CaaStle.

55.     Accordingly, Plaintiff seeks avoidance of the transfer of the Redemption Amount and judgment against Defendant Singh, Jaswinder Pal Signh in his capacity as the trustee of the Singh Trust, and the Singh Trust in the amount of at least the Redemption Amount of $6,000,000, plus interest and costs, and for such other relief as the Court deems appropriate.

## COUNT IV
**(v. Defendant Singh, Jaswinder Pal Singh in his capacity as the trustee of the Singh Trust, and Singh Trust)**
**Avoidance of Fraudulent Transfer– 6 Del. C. §§ 1304, 1305 and 1307**
**(Less than Reasonably Equivalent Value)**

56.     Plaintiff realleges and incorporates all preceding paragraphs as if fully set forth herein.

12

57.    Pursuant to 11 U.S.C. § 544(b)(1), the Trustee may avoid any transfer of an interest of the Debtor in property that is voidable under applicable law by a creditor holding a claim that is allowable under 11 U.S.C. § 502.

58.    CaaStle was insolvent at the time of the transfer of the Redemption Amount because at a fair valuation, the sum of its debts was greater than the sum of all of its assets.

59.    The Share Redemption is an avoidable transfer under Delaware law because it was made or incurred on or within four years before the Petition Date and:

a.    CaaStle received less than a reasonably equivalent value in exchange for the Share Redemption, and:

i.    Pursuant to 11 U.S.C. § 544(b)(1), the Trustee stands in the shoes of one or more creditors whose claim arose before the transfer was made, and CaaStle was insolvent on the date the Share Redemption was made or became insolvent as a result of the Share Redemption;

ii.    CaaStle was engaged in a business or a transaction, or was about to engage in a business or a transaction, for which the remaining assets of the Debtor were unreasonably small in relation to the business or transaction; or

iii.    CaaStle intended to incur, or believed or reasonably should have believed that it would incur, debts beyond its ability to pay as such debts became due.

60.    Accordingly, Plaintiff seeks avoidance of the transfer of the Redemption Amount and judgment against Defendant Singh, Jaswinder Pal Singh in his capacity as the trustee of the

13

#125548460v1

Singh Trust, and the Singh Trust in the amount of at least the Redemption Amount of $6,000,000, plus interest and costs, and for such other relief as the Court deems appropriate.

## COUNT V
**(v. Defendant Singh, Jaswinder Pal Singh in his capacity as the trustee of the Singh Trust, and Singh Trust)**
**Avoidance of Voidable Transfer – N.Y. Debt. Cred. L. §§ 273 and 276**
**(Actual Intent)**

61. Plaintiff realleges and incorporates all preceding paragraphs as if fully set forth herein.

62. In the alternative to Count III, should the Court find that New York law, and not Delaware law, is the applicable state law, Plaintiff brings this claim under the New York Uniform Voidable Transactions Act.

63. Pursuant to 11 U.S.C. § 544(b)(1), the Trustee may avoid any transfer of an interest of the Debtor in property that is voidable under applicable law by a creditor holding a claim that is allowable under 11 U.S.C. § 502.

64. The Share Redemption is an avoidable transfer under New York law because it was made or incurred on or within four years before the Petition Date and CaaStle made the Share Redemption with actual intent to hinder, delay, or defraud any entity to which CaaStle was or became indebted to on or after the date the transfer was made.

65. Accordingly, Plaintiff seeks avoidance of the transfer of the Redemption Amount, and judgment against Defendant Singh, Jaswinder Pal Singh in his capacity as the trustee of the Singh Trust, and the Singh Trust in the amount of at least the Redemption Amount of $6,000,000, plus interest and costs, attorneys' fees pursuant to N.Y. Debt. Cred. L. § 276-A, and for such other relief as the Court deems appropriate.

14

## COUNT VI
### (v. Defendant Singh, Jaswinder Pal Singh in his capacity as the trustee of the Singh Trust, and Singh Trust)
### Avoidance of Voidable Transfer – N.Y. Debt. Cred. L. §§ 273, 274 and 276
### (Less than Reasonably Equivalent Value)

66.     Plaintiff realleges and incorporates all preceding paragraphs as if fully set forth herein.

67.     In the alternative to Count IV, should the Court find that New York law, and not Delaware law, is the applicable state law, Plaintiff brings this claim under the New York Uniform Voidable Transactions Act.

68.     Pursuant to 11 U.S.C. § 544(b)(1), the Trustee may avoid any transfer of an interest of the Debtor in property that is voidable under applicable law by a creditor holding a claim that is allowable under 11 U.S.C. § 502.

69.     CaaStle was insolvent at the time of the transfer of the Redemption Amount because at a fair valuation, the sum of its debts was greater than the sum of all of its assets.

70.     The Share Redemption is an avoidable transfer under New York law because it was made or incurred on or within four years before the Petition Date, CaaStle received less than a reasonably equivalent value in exchange for the Share Redemption, and:

a.     Pursuant to 11 U.S.C. § 544(b)(1), the Trustee stands in the shoes of one or more creditors whose claim arose before the transfer was made, and CaaStle was insolvent on the date the Share Redemption was made or became insolvent as a result of the Share Redemption;

b.     CaaStle was engaged in a business or a transaction, or was about to engage in a business or a transaction, for which the remaining assets of CaaStle were unreasonably small in relation to the business or transaction; or

c.     CaaStle intended to incur, or believed or reasonably should have believed

15

#125548460v1

that it would incur, debts that would be beyond its ability to pay as such debts became due.

71.     Accordingly, Plaintiff seeks avoidance of the transfer of the Redemption Amount, and judgment against Defendant Singh, Jaswinder Pal Singh in his capacity as the trustee of the Singh Trust, and the Singh Trust in the amount of at least the Redemption Amount of $6,000,000, plus interest and costs, attorneys' fees pursuant to N.Y. Debt. Cred. L. § 276-A, and for such other relief as the Court deems appropriate.

## COUNT VII
### (v. all Defendants)
**Recovery against Initial Transferee, the Entity For Whose Benefit the Transfer Was Made, Intermediate and Mediate Transferees – 11 U.S.C. § 550, 6 Del. C. § 1308, N.Y. Debt. Cred. L. §§ 276-A, 277**

72.     Plaintiff realleges and incorporates all preceding paragraphs as if fully set forth herein.

73.     The Share Redemption is a voidable transfer under § 550 of the Bankruptcy Code and applicable state law, including 6 Del. C. § 1308, or, as applicable, N.Y. Debt. Cred. L. § 277.

74.     Defendant Singh is the entity for whose benefit the transfer was made under 11 U.S.C. § 550(a) and applicable state law, and the Redemption Amount is recoverable from Defendant Singh pursuant to 11 U.S.C. § 550 and applicable state law.

75.     The Singh Trust is the initial transferee of the Redemption Amount under 11 U.S.C. § 550(a) and applicable state law, and the Redemption Amount is recoverable from the Singh Trust pursuant to 11 U.S.C. § 550 and applicable state law.

76.     To the extent that some or all of the Redemption Amount was subsequently transferred to John Does 1-10, John Does 1-10 are immediate or mediate transferees under 11 U.S.C. § 550(a) and applicable state law, and all or a portion of the Redemption Amount is therefore recoverable from John Does 1-10 pursuant to 11 U.S.C. § 550 and applicable state law.

16

77.    Accordingly, Plaintiff seeks judgment against Defendant Singh, Jaswinder Pal Singh in his capacity as the trustee of the Singh Trust, the Singh Trust, and John Does 1-10 in the amount of at least $6,000,000, plus interest and costs, and for such other relief as the Court deems appropriate.

78.    Further, to the extent that New York state law is applicable, Plaintiff seeks recovery of attorneys' fees pursuant to N.Y. Debt. Cred. L. § 276-A.

**COUNT VIII**
**(v. all Defendants)**
**Disallowance of Claims – 11 U.S.C. § 502(d)**

79.    Plaintiff realleges and incorporates all preceding paragraphs as if fully set forth herein.

80.    Defendants are initial transferees, the entity for whose benefit the transfer was made, and/or immediate and mediate transferees of the Share Redemption avoidable under section 548 of the Bankruptcy Code, which is property recoverable under section 550 of the Bankruptcy Code.

81.    Defendants have not paid the Redemption Amount, or turned over such property, for which Defendants are liable under section 550 of the Bankruptcy Code.

82.    Pursuant to section 502(d) of the Bankruptcy Code, any and all claims of Defendants against the Debtor's estate in this Chapter 7 Case must be disallowed until such time as Defendants pay to Plaintiff an amount equal to the Redemption Amount, plus interest thereon and costs.

**Reservation of Rights**

83.    During the course of this proceeding, Plaintiff may learn through discovery or otherwise of additional transfers made to Defendant Singh, the Singh Trust, or John Does 1-10

17

prior to the Petition Date that may be avoidable under the Bankruptcy Code and/or applicable state law.  It is Plaintiff's intention to avoid and recover all avoidable transfers of property made by Debtor to or for the benefit of the Defendants or any other transferee.  Plaintiff reserves the right to amend this original Complaint to include, without limitation: (i) further information regarding the Share Redemption; (ii) additional transfers; (iii) modification of and/or revisions to Defendants' name; (iv) additional defendants; and/or (v) additional causes of action (collectively, the "Amendments") that may become known to Plaintiff at any time during this adversary proceeding, through formal discovery or otherwise.  Any such Amendments shall relate back to this original Complaint.

### Requested Relief

WHEREFORE, the Trustee respectfully demands judgment against Defendant Singh, Jaswinder Pal Singh in his capacity as the trustee of the Singh Trust, the Singh Trust, and John Does 1-10 as follows:

      a.     Avoiding the Share Redemption pursuant to section 548 of the Bankruptcy Code;

      b.     Avoiding the Share Redemption pursuant to sections 1304, 1305 and 1307 of the Delaware Code;

      c.     In the alternative, should the Court find the New York state law applies rather than Delaware state law, avoiding the Share Redemption pursuant to sections 273, 274 and 276 of the New York Debtor and Creditor Laws;

      d.     Recovery from the Defendant Singh as the entity for whose benefit such transfer was made, and from Jaswinder Pal Singh in his capacity as the trustee of the Singh Trust and the Singh Trust as the initial transferee, of the monetary value of the Share Redemption,

18

pursuant to section 550 of the Bankruptcy Code, section 1308 of the Delaware Code, and/or section 277 of the New York Debtor and Creditor Laws;

e.      Recovery of the monetary value of the Share Redemption from any immediate or mediate transferees of the initial transferee, pursuant to section 550 of the Bankruptcy Code, section 1308 of the Delaware Code, and/or section 277 of the New York Debtor and Creditor Laws;

f.      To the extent that New York state law is applicable, attorneys' fees pursuant to N.Y. Debt. Cred. L. § 276-A;

g.      Disallowing any claims held by Defendants or John Does 1-10 against the Debtor's Estate until Defendants and John Does 1-10 return the value of the Share Redemption to Plaintiff pursuant to section 502 of the Bankruptcy Code;

h.      Awarding Plaintiff interest as may be allowed by law;

i.      Awarding Plaintiff costs of suit incurred herein; and

j.      Such other and further relief as this Court may deem just and proper.

REMAINDER OF PAGE INTENTIONALLY LEFT BLANK

#125548460v1

Dated: April 1, 2026                      **DILWORTH PAXSON LLP**

                                          */s/ Peter C. Hughes*
                                          Peter C. Hughes, Esq. (No. 4180)
                                          800 N. King Street, Suite 202
                                          Wilmington, DE 19801
                                          Telephone:    302-571-9800
                                          Facsimile:    302-571-8875
                                          Email:        phughes@dilworthlaw.com

                                                   And

                                          Peter C. Hughes, Esq.
                                          Jack Small, Esq.
                                          One Liberty Place
                                          1650 Market St., Suite 1200
                                          Philadelphia, PA 19103
                                          Telephone:    (215) 575-7000
                                          Facsimile:    (215) 754-4603
                                          Email:        phughes@dilworthlaw.com
                                          Email:        jsmall@dilworthlaw.com

                                          *Attorneys for George L. Miller, Chapter 7 Trustee*

20

#125548460v1